UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY PHILLIPS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00686-SNLJ |
| | ) | |
| CHARTER COMMUNICATIONS, INC. | ) | |
| WELFARE BENEFIT PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff's motion for summary judgment (#22) and defendant's cross-motion for summary judgment (#26). Those motions have been fully briefed. For the reasons set forth below, the Court will **DENY** plaintiff's motion and **GRANT** defendant's motion.

**I. BACKGROUND**

Plaintiff filed this action seeking to overturn a denial of short-term disability benefits under defendant's self-funded "Welfare Benefits Plan." Claims for short-term disability are evaluated by a claims administrator, Sedgwick Claims Management Services, Inc. Sedgwick is the "sole authority to determine benefit claims under the terms of the Short-Term Disability Program." Sedgwick determines "in its discretion" whether the "applicant is entitled to [benefits under the Plan]."

Defendant is a telecommunications company providing cable, pay TV, telephone, and high-speed internet services. Plaintiff has been an employee of defendant since 2010.

1

Her position as a "community sales specialist" requires, among other things, an ability to read, write, persuade, clearly communicate, build relationships, deal with the public, and maintain confidentiality.

Plaintiff has been treated for bipolar disorder since 2012 and generalized anxiety disorder since 2015. On March 31, 2017, plaintiff contacted Sedgwick claiming "stress" and "bipolar disorder" caused her to experience disabling symptoms that required her to miss work. That same day, plaintiff was seen at Central Texas Mental Health for a follow-up visit regarding her bipolar and anxiety disorders. A physician's assistant, Julie Williams, noted in plaintiff's medical chart that she exhibited no motor abnormalities, had "linear, coherent thought," no "psychotic thoughts," "good judgment," intact memory, and "fair concentration." However, plaintiff was also noted as being "anxious, stressed, weepy, and [exhibiting a] labile affect."

On April 3, 2017, Sedgwick explained by letter that "medical documentation to support [plaintiff's] claim" would need to be received on or before April 23, 2017. Two days later, Williams completed a "concurrent disability and leave statement of incapacity," whereby Williams indicated plaintiff was able to concentrate for five-to-ten minute timespans, was exhibiting reasoning and judgment within normal limits, and was not delusional or suffering from hallucinations. Nonetheless, Williams stated plaintiff was unable to perform "all" of her job functions. Based upon this record, Sedgwick preliminarily approved plaintiff for short-term disability benefits on April 11, 2017, for a duration beginning April 22, 2017, through May 1, 2017. However, plaintiff was

instructed to provide additional medical documentation by May 8, 2017, should she require an extension of her short-term disability benefits.

Plaintiff was seen by Williams for another follow-up visit on April 18, 2017. Williams' notes were substantially identical to plaintiff's earlier visit. On April 26, 2017, Williams completed a second disability and leave statement, which noted a "minimal[] improve[ment] from the prior visit," and, based upon this statement, Sedgwick extended plaintiff's short-term disability through May 14, 2017. Once again, Sedgwick stated that additional medical documentation would be required to further extend plaintiff's short-term disability.

Plaintiff reported for a third follow-up visit with Williams on May 11, 2017. Once again, Williams' notes were substantially identical to the March 31st and April 18th visits. A third disability and leave statement was completed by Williams—again, largely similar to the first two statements—and, through it, Sedgwick extended plaintiff's short-term disability benefits through June 2, 2017.

Plaintiff reported for a fourth follow-up visit with Williams on June 2, 2017. This time, while plaintiff's complaints were largely the same, she also reported suicidal ideations without an intent or plan. Williams' notes mostly mirrored her prior notes, except for an additional indication that plaintiff had "overinclusive, blocking thought processes" and "psychotic thought content." Plaintiff requested that she be permitted to extend her disability through approximately October 27, 2017.

On June 13, 2017, Sedgwick—by letter—denied plaintiff of further short-term disability benefits, indicating such benefits would cease as of June 3, 2017. For its reason,

Sedgwick indicated "medical stated referral to therapist but no therapist notes were provided. It is not clear why you are unable to return to work at this time." Sedgwick also explained

> "A claim of total disability or partial disability cannot be based solely on self-reported symptoms. Total disability and partial disability must be based at least in part on objective evidence, which means … diagnosis determination by the physician by use of tests, imaging, clinical studies, medical procedures and other physical evidence[,] intensity and frequency of treatment[,] and presence of other health conditions, injuries, and illness."

Sedgwick then informed plaintiff of her appeal rights and noted that she may "submit additional medical information, and any facts, data, questions, or comments you deem appropriate for use to give your appeal proper consideration."

Plaintiff initiated an appeal on June 15, 2017. The next day, plaintiff submitted an e-mail to Connie Wulf (a disability administrator) stating, among other things, that "my physician and I are unable to determine what additional information Sedgwick may require to approve a continuation of my short-term disability benefits." During the several extensions that took place before Sedgwick's initial denial, Wulf has repeatedly asked plaintiff for "any testing you can provide." And administrative notes indicate plaintiff was repeatedly told that the provided medical records do not support an ongoing disability beyond the June 2nd date of termination.

Nonetheless, what plaintiff provided on appeal was additional medical treatment notes without objective clinical testing. These new treatment notes include those from Brittney Jones, a therapist at Austin Anxiety and Behavioral Health Services, PLLC., who determined over several visits that plaintiff was able to "identify many of her

4

automatic thoughts" but would nonetheless need to "continue to actively work on these skills in order to maintain her gains." Plaintiff also provided a fourth disability and leave statement from Williams that contained the same basic information as the other statements except for changes to certain medication dosages. Meanwhile, with a medical authorization in hand, Sedgwick requested from Williams and other providers any "objective clinical information that supports your patient's inability to return to work," though it received none.

Sedgwick also commissioned a board-certified psychiatrist, Dr. Patrick Young, to conduct an independent review of the record to determine whether the record supported a mental impairment of the sort that would sufficiently limit plaintiff's ability to work—in other words, to determine whether plaintiff was partially or totally disabled. Young reviewed the various office visit records of Williams and Jones, as well as the myriad disability and leave statements. Young also documented his several attempts to make contact with Williams, Jones, and a Dr. Michael Musgrove—none of whom responded to Young.[1]

Young, ultimately, determined that plaintiff "is not functionally impaired from her own occupation from 6/3/17 through return to work." Young observed that plaintiff's records-to-date "do not really give enough detail to support impairment." These records, in his view, "do not really describe symptoms" and do not "clarif[y] in any detail" what

---

[1] Musgrove worked at Central Texas Mental Health alongside Williams, and would often co-sign or otherwise "sign off" on Williams' findings. However, from the notes, Williams appears to be plaintiff's primary contact there.

limitations plaintiff allegedly had. Young explained, "[t]here are no findings that show specific impairments. General statements are made, but they are not further clarified."

An addendum was added by Young two weeks later after plaintiff had submitted additional medical records. These new records indicated several physical conditions—including chest pains, erratic breathing, headaches, and muscle tightness. A fifth disability and leave statement was also provided. In that statement, Williams once again retained the same substantial treatment plan, indicated plaintiff could focus for five-to-ten minutes at a time, and opined that plaintiff otherwise had judgment "within normal limits." Once more, Young concluded that plaintiff was not disabled because "findings [were] contradictory" at times and because generalized statements about plaintiff, such that she was having "psychotic thoughts," were not "further clarified."

On August 15, 2017, Sedgwick denied plaintiff's appeal. Sedgwick began by setting forth the definition of short-term disability as one that totally or partially limits the ability to perform the essential duties of a claimant's occupation. Sedgwick then indicated it had reviewed plaintiff's full medical file as well as Dr. Young's report. Ultimately, Sedgwick held:

> "There is no clear clinical documentation submitted for review that is found to be supportive of any continued condition of disability or resulting functional impairment of any severity to support disability from [your] job as a community sales specialist."

The denial letter concluded by informing plaintiff of her rights to seek redress pursuant to Section 502(a) of the Employee Retirement Income Security Act (ERISA).

6

## II. ANALYSIS

Plaintiff raises two arguments. First, plaintiff argues Sedgick changed its reasoning for denying plaintiff's claim on appeal "without giving plaintiff's an opportunity to appeal the ultimate grounds." Second, plaintiff argues Sedgwick's denial on appeal was unreasonable because it relied "exclusively on the opinion of Dr. Young," who, she believes, erroneously concluded she was not disabled by relying not on facts, but on a "perceived lack of facts." The Court addresses plaintiff's change-of-reasoning argument first, as it also affects what standard of review applies.

### A. Standard of Review and Whether a "Serious Procedural Irregularity" Was Committed So As To Afford Sedgwick Less Deference

Under Eighth Circuit precedent, there are several standards of review that can apply in an ERISA action, including a deferential abuse of discretion standard (also called the arbitrary and capricious standard) and a less deferential sliding-scale standard. *See Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 587 (8th Cir. 1999); *Cox v. Mid-America Dairymen, Inc.*, 965 F.2d 569, 572 n.3 (8th Cir. 1992) (noting the arbitrary and capricious and abuse of discretion standards, under ERISA, act as a "distinction without a difference"). When a "benefit plan gives the administrator [discretionary] authority to determine eligibility," the abuse of discretion standard is used. *Barnhart*, 179 F.3d at 587. However, when a claimant "comes forward with evidence establishing that the administrator acted under a conflict of interest" or commits a "serious procedural irregularity," the less-deferential sliding-scale standard applies "in proportion to the

extent of conflict present [or irregularity]." *Id*.; *Sahulka v. Lucent Technologies, Inc*., 206 F.3d 763, 768 (8th Cir. 2000).

Plaintiff concedes Sedgwick had discretionary authority, ordinarily invoking the abuse of discretion standard, but argues Sedgwick "committed a serious procedural irregularity when it changed its final justification for denying plaintiff's claim." There is some support for the general notion that an administrator commits a serious procedural error—obstructing a claimant's right to a full and fair review—when denying a claim for one reason and then, on appeal, turning around and denying the claim for an entirely different reason. *See, e.g., Gagliano v. Reliance Standard Life Ins. Co*. 547 F.3d 230, 234-237 (4th Cir. 2008); *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 882 (6th Cir. 2007). But, that isn't what happened here. The record makes clear that Sedgwick's fundamental reason for denying plaintiff's claim remained constant: Sedgwick believed there was a lack of objective medical evidence supporting plaintiff's claim of disabling functional impairment.

Indeed, Sedgwick was persistently concerned with the brevity and general opaqueness of the treatment notes by Williams, Jones, and Musgrove. In its initial denial letter, Sedgwick made clear to plaintiff that "[t]otal disability and partial disability must be based at least in part on objective evidence," and it encouraged plaintiff to provide such evidence and to ask questions if she was confused about what was expected. Likewise, the Plan, itself, expressly states that "a claim of total disability or partial disability cannot be based solely on self-reported symptoms … [but] must be based at

8

least in part on objective evidence." Ergo, Sedgwick, by demanding some minimal level of objective substantiation, was merely abiding by the parameters of the Plan.

Despite this, plaintiff submitted the same basic type of evidence on appeal that was deemed insufficient during the initial denial. In particular, plaintiff submitted only short, conclusory treatment notes that did not explain what the observations and findings contained therein meant from a functional perspective. Of course, it was also noted in the independent medical review by Young that none of plaintiff's providers responded— despite repeated attempts to make contact with them— so that their observations and findings could not be further elucidated. Thus, it should come as no surprise that Sedgwick denied plaintiff on appeal for failing to provide "clear clinical documentation … supportive of any continued condition of disability or resulting functional impairment."

In short, a demand for objective medical evidence to substantiate the functional limitations of a claimed disability is not a procedural irregularity. Sedgwick was not at fault in requesting this evidence. *See Pralutsky v. Metro. Life Ins. Co*., 435 F.3d 833 (8th Cir. 2006) (holding that it was not unreasonable for administrator to require clinical and objective evidence substantiating claimant's alleged functional limitations resulting from fibromyalgia); *see also Boardman v. Prudential Ins. Co. of Am.,* 337 F.3d 9, 16 n. 5 (1st Cir. 2003) (reasoning that, even if the *diagnosis* of an illness does not lend itself to objective clinical findings, the functional symptoms of such illness do lend themselves to objective analysis).

And this Court does not agree that, in seeking objective evidence, Sedgwick was somehow "chang[ing] its final justification for denying plaintiff's claim." *See Pettaway v. Teachers Ins. and Annuity Ass'n of Am.*, 699 F.Supp.2d 185, 207-208 (D.C. Cir. 2010) (claimant not denied a full and fair review on the basis of changing bases for denial where the record reflected the "fundamental reason for the denial … remained the same."). Defendant explains plaintiff's "claim and appeal were both denied because the records she provided did not substantiate her claimed disability"—on both occasions Sedgwick indicated it was "not clear" from the evidence provided why plaintiff was unable to return to work. To be sure, nothing about Sedgwick's decision, either at the initial denial or on appeal, would lead this Court to believe it was denying plaintiff for an arbitrary or otherwise capricious purpose. *See Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 988 (8th Cir. 2014) ("[A] procedural error must leave the Court with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim"). There being no procedural irregularity, abuse of discretion is the applicable standard here.

Under the abuse of discretion standard, Sedgwick's denial must be upheld "if it is reasonable, that is, supported by substantial evidence[, which] means more than a scintilla but less than a preponderance." *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 548 (8th Cir. 2017). And, as such, deference is given to Sedgwick's interpretation of the Plan and its fact-based eligibility determinations. *Carlson v. Standard Ins. Co.*, 920 F.Supp.2d 1028, 1032 (W.D. Mo. 2013). Accordingly, the Court will not substitute its judgment for that of Sedgwick in weighing conflicting evidence. *Id*.

## B. Whether Sedgwick's Denial of Benefits Was Unreasonable

For her second point, plaintiff argues Sedgwick erroneously relied solely on the opinions of its own independent medical examiner, Dr. Young, who plaintiff asserts had no evidence to conclude that she was not disabled as that term is defined by the Plan. It is, indeed, the case that Sedgwick was required on appeal to "provide a review that takes into account all comments, documents, records, and other information submitted by the claimant." 29 C.F.R. § 2560.503-1(h)(2)(iv). But, plaintiff's argument is refuted by the record.

First, the letter denying plaintiff's appeal expressly states that "Sedgwick … reviewed medical records from [] Musgrove, [] Williams, [and] Jones … [as well as] case notes from 5/11/2017 through 7/25/2017." More importantly, though, it then goes on to discuss many of these records in detail before concluding that plaintiff is not disabled. There is simply no evidence that Sedgwick relied "exclusively on the opinion of Dr. Young," as plaintiff suggests.

Nor is it true that Young was basing his conclusions on less-than-a-scintilla of evidence. Young merely concluded that, in his medical judgment, the record presented by plaintiff did not sufficiently prove she was functionally disabled. Young's conclusion was, in essence, an additional affirmation—a set of fresh, independent eyes—indicating to Sedgwick and its appellate unit that the record was insufficient as presented by plaintiff. And again, the Plan expressly requires that a disability "be based at least in part on objective evidence," which was Young's essential conclusion that plaintiff's disability did not actually satisfy this threshold.

11

Ultimately, the Court must decide whether there is substantial evidence in the record for which to justify Sedgwick's conclusion that plaintiff was capable of performing her job as community sales specialist and, thus, was not disabled. A review of the record confirms that such evidence is, indeed, present here. For example, nothing about Jones' treatment notes would suggest any type of functional impairment of disabling severity; rather, these notes indicate plaintiff was able to "identify many of her automatic thoughts" and had made some gains in awareness, which Jones hoped to maintain through "weekly individual therapy sessions." Meanwhile, Williams, while noting plaintiff's anxiety and depression, repeatedly commented that plaintiff had "coherent thought," "good insight," "good judgment," "intact memory," and was "calm, cooperative, [and] interactive [with] no acute distress." And even in Williams' fifth and final disability and leave statement, which found plaintiff was incapacitated, it is noteworthy that several diagnostic portions of the statement (which, as a form document, used several fill-in-the-blank-type questions to evaluate plaintiff's limitations) were ignored or otherwise skipped over—rendering it a half-picture at best. Moreover, that final statement (and the others before it) mention plaintiff had reasoning and judgment "within normal limits" and had no evident delusion ideations; yet, it nonetheless concluded, without explanation, that plaintiff had an "inability to perform essential job functions due to … psychiatric conditions." Such conclusory determinations are simply insufficient.

It cannot be overlooked that the Plan defines a disability as one in which the claimant "cannot perform the essential duties of [their] own occupation." The medical

records provided by plaintiff do little to *show* how plaintiff's specific functional limitations would tend to prohibit her performance as a community sales specialist. Upon this record, it simply cannot be said that it was unreasonable to conclude that plaintiff was not disabled. Accordingly, this Court finds Sedgwick did not abuse its discretion in denying plaintiff short-term disability benefits under the Plan.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment (#22) is **DENIED**.

**IT IS FURTHERED ORDERED** that defendant's cross-motion for summary judgment (#26) is **GRANTED**. Judgement to follow.

So ordered this 28th day of February 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE